UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JANELLE POTCHKA,<br><br>    Plaintiff,<br><br>    v.<br><br>PEKIN INSURANCE,<br><br>    Defendant. | Case No. 3:23-CV-448-CCB |

## OPINION AND ORDER

In March 2022, Billy Simpson was returning to his vehicle after visiting a Tractor Supply store in Wabash, Indiana when he was struck by a vehicle driven by an uninsured driver. At the time of the accident, Mr. Simpson's vehicle was insured by Defendant Pekin Insurance ("Pekin"). Mr. Simpson submitted a claim to Pekin seeking uninsured motorist bodily injury coverage and medical payment coverage. Pekin denied Mr. Simpson's claim. Plaintiff, the personal representative of the Estate of Billy Simpson, sued Pekin to recover benefits under Pekin's automobile liability policy and umbrella policy (Count I). (ECF 6). Plaintiff also alleges that Pekin acted in bad faith when it denied Mr. Simpson's claim (Count II). (*Id.*) Pekin moved for summary judgment as to both counts (ECF 27). After Pekin filed its motion for summary judgment, Plaintiff filed an unopposed motion to dismiss Count II of its amended complaint with prejudice, costs paid. (ECF 37). For the reasons stated herein, both motions are granted.

I.      **Background facts**

The following facts are not in dispute. Mr. Simpson was in a Tractor Supply store in Wabash, Indiana for about 10 minutes. (ECF 27-6 at 4). Mr. Simpson was in the main drive lane outside the front door of the Tractor Supply store and returning to his vehicle in the parking lot when he was struck by a vehicle operated by Adam McKenzie.[1] (ECF 27-6 at 4; ECF 27-7 at 7-8, 15; ECF 27-7 at 32). At the time of the incident, Mr. McKenzie did not have auto insurance.

Mr. Simpson's vehicle was in the parking lot of the Tractor Supply store, about 45 to 60 feet from where Mr. Simpson was struck. (ECF 27-7 at 19-20). At the time of the accident, Mr. Simpson's vehicle was covered by Pekin's Business Auto Insurance Policy that included coverage for damages arising from a driver or owner of an uninsured motor vehicle. (ECF 27-1 at 14, 18; ECF 27-7 at 28). The named insurer under Pekin's policy is BJS Services, LLC. (ECF 27-1 at 4). Pekin's policy also provides that "insureds" include "[a]nyone 'occupying'" a covered vehicle. (*Id*. at 18). Mr. Simpson submitted a claim to Pekin seeking uninsured motorist coverage and medical payments coverage under the policy. (ECF 27-1 at 2). Pekin denied Mr. Simpson's claim. (ECF 27-1). Pekin argues that summary judgment is proper because Mr. Simpson was not "occupying" the vehicle at the time of the accident and so Mr. Simpson was not covered by Pekin's

---

[1] The Court notes that portions of Defendant's statement of facts cite only to the Amended Complaint, including the date of the accident, the location of the Tractor Supply store, that Mr. Mckenzie was the driver of the vehicle that struck Mr. Simpson, and that Mr. McKenzie did not have auto insurance. *See* ECF 40 at ¶¶ 1, 3, 10. While these facts are undisputed background information, the Court cautions counsel to cite to record evidence rather than complaint allegations on a motion for summary judgment. *See* N.D.Ind. L.R.56-1(a)(3)(B).

2

Business Auto Insurance Policy. Pekin also argues that summary judgment is proper because its Umbrella Policy does not provide any uninsured motorist coverage to Mr. Simpson.

II.     Analysis

In interpreting Pekin's insurance policy, the Court must apply Indiana law. *See Allstate Ins. Co. v. Keca,* 368 F.3d 793, 796 (7th Cir.2004) ("A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue."); *State Farm Mut. Auto. Ins. Co. v. Pate,* 275 F.3d 666, 669 (7th Cir.2001) ("When the state Supreme Court has not decided the issue, the rulings of the state intermediate appellate courts must be accorded great weight, unless there are persuasive indications that the state's highest court would decide the case differently."). The parties do not dispute that Indiana law applies.

An insurance contract "is subject to the same rules of interpretation as are other contracts." *Morris v. Econ. Fire & Cas. Co.,* 848 N.E.2d 663, 666 (Ind.2006) (citation omitted). The interpretation of an insurance contract is a question of law. *Briles v. Wausau Ins. Companies,* 858 N.E.2d 208, 213 (Ind.App.2006); *see also Cinergy Corp. v. Associated Elec. & Gas Ins. Servs.,* 865 N.E.2d 571, 574 (Ind.2007). Accordingly, insurance policy interpretation questions are "particularly well-suited for summary judgment." *Argonaut Ins. Co. v. Jones,* 953 N.E.2d 608, 614 (Ind.Ct.App.2011) (citation omitted). In reviewing policy terms, the Court construes the terms "from the perspective of an ordinary policyholder of average intelligence." *Allgood v. Meridian Sec. Ins. Co.,* 836 N.E.2d 243, 246–47 (Ind.2005). If the contract language is clear and unambiguous, it

should be given its plain and ordinary meaning. *Tate v. Secura Ins.,* 587 N.E.2d 665, 668 (Ind.1992). An interpretation should harmonize the policy's provisions rather than place its provisions in conflict. *Allgood,* 836 N.E.2d at 247. Where an ambiguity exists, the policy is generally construed in favor of the insured. *USA Life One Ins. Co. of Ind. v. Nuckolls,* 682 N.E.2d 534, 538 (Ind. 1997). However, an ambiguity does not exist simply because an insured and an insurer disagree about the meaning of a provision, but only if reasonable people could disagree about the meaning of the contract's terms. *Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002); *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 244 (Ind.2000) ("An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning.").

Under Pekin's Business Auto Insurance Policy, Pekin will pay all sums an insured is entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle. (ECF 27-1 at 18). The named insurer under the policy's declaration is BJS Services, LLC, a limited liability company. (*Id.*) If the named insurer under the policy's declaration is a limited liability company, then "insureds" under the policy also include, among others:

> Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss or destruction."

(*Id.*)

The policy further provides that "'[o]ccupying' means in, upon, getting in, on, out or off." (*Id.* at 21).

Pekin does not dispute that the vehicle driven by Mr. Simpson is a covered "auto" under the policy or that Mr. McKenzie was the owner or driver of an uninsured

4

vehicle. Pekin argues that because Mr. Simpson was located between 45 and 60 feet from the vehicle when he was struck, he was not "in, upon, getting in, on, out or off" of the vehicle at the time of the accident and therefore not entitled to uninsured motorist coverage under its policy. Plaintiff argues that, as a matter of law, Mr. Simpson was "getting in" the covered vehicle at the time of the accident.

While Plaintiff does not argue that Mr. Simpson was "in," "on" or "upon" the covered vehicle, the Court finds Mr. Simpson was not "in," "on" or "upon" the covered vehicle at the time of the accident. Applying the common and ordinary usage of the terms, Mr. Simpson was not inside or near the contours of the vehicle. *See State Farm Mut. Auto. Ins. Co. v. Barton*, 509 N.E.2d 244, 248 (Ind. Ct. App. 1987) ("The words 'in' and 'on upon' refer to specific positions with respect to the vehicle, 'in' being inside the vehicle and 'on upon' being outside the contour of the vehicle."). It is undisputed that Mr. Simpson was outside the main entrance of the Tractor Supply store at least 45 feet away from the vehicle when he was struck, and so he was not inside or outside the contour of the vehicle.

While Plaintiff does not argue that Mr. Simpson was "getting . . . out or off" his vehicle, the Court also finds that Mr. Simpson was not "getting…out or off" his vehicle. The Indiana Court of Appeals instructed courts to consider several factors when determining whether an individual is "getting out of" an automobile:

> These factors include: the distance between the accident and the automobile; the time separating the accident and the exit from the automobile; the individual's opportunity to reach a zone of safety; and the individual's intentions in relation to the automobile. These factors will, of course, have greater or lesser weight depending upon the circumstances of each individual case.

5

*Miller v. Loman*, 518 N.E. 2d 486, 482 (Ind. Ct. App. 1987).

In considering the factors, including the time from Mr. Simpson's exit from the vehicle and the time of the accident, the Court finds that Mr. Simpson was not getting out or off his vehicle at the time of the accident. It is undisputed that Mr. Simpson had just left the Tractor Supply store after being in the store for 10 minutes, so Mr. Simpson was in a zone of safety before the accident. Mr. Simpson was also several feet from his vehicle at the time of the accident.

That leaves the question of whether Mr. Simpson was "getting in" the vehicle. Pekin argues that Mr. Simpson was not "getting in" the vehicle because he was 45 to 60 feet away from the vehicle at the time of the accident. In support, Pekin relies on an Indiana Court of Appeals decision, *Lake States Ins. Co. v. Tech Tools, Inc.*, where the court, in analyzing an insurance policy that similarly extended to individuals who were "occupying" a covered vehicle, held that the "occupying" is not an ambiguous term, and that the claimant was not, as a matter of law, "getting in" the vehicle when she was sixty feet from the vehicle. 743 N.E.2d 314, 318 (Ind. Ct. App. 2001). The uninsured motorist policy in *Lake*, like Pekin's insurance policy, extended coverage to those "occupying" the covered vehicle, defined under the policy to mean "in, upon, getting in, out or off." *Lake States Ins. Co. v. Tech Tools, Inc.*, 743 N.E.2d 314, 321 (Ind. Ct. App. 2001). The court noted that to "occupy" means under Black Law's Dictionary "to take or enter upon possession of; to hold possession of; to hold or keep for use; to possess; to tenant; to do business in; to take or hold possession. Actual use, possession, and cultivation," and under the American Heritage Dictionary to mean "1. to fill up (time or

6

space) 2. to dwell or reside in 3. to hold or fill (an office or a position) 4. to seize possession of and maintain control over by or as if by conquest 5. to engage, employ, or busy (oneself)" *Id.* at 318-319. The court also noted that the term "get in" is defined under the American Heritage Dictionary to mean, in part "1. a. to enter. b. to arrive." *Id.* at 318. The court in *Lake*, after considering the *Miller* factors, then concluded:

> [I]n the case at hand, we find Mary's distance from the vehicle to be of a particularly greater determinative weight in finding that Mary was neither "occupying" nor "getting in" the vehicle when she was sixty feet from the vehicle. An examination of the dictionary definition of these terms certainly does not apply to an individual sixty (60) feet from the covered vehicle. Specifically, **we hold that "getting in," means entering, requiring a closer proximity than sixty feet.** Thus, we find that the term "occupying" is not ambiguous, and therefore, Mary's acts and geographic proximity of sixty feet do not fit within the policy language.

*Id.* at 320 (emphasis added); *see also Michigan Mut. Ins. Co. v. Combs*, 446 N.E.2d 1001, 1004 (Ind. Ct. App. 1983) (explaining that the terms that define "occupying" function to qualify or limit the meaning of "occupying," and so the terms cannot be construed without reference to the word they define). The court in *Lake* also concluded that "the idea of extending coverage for individuals "'getting in' or 'occupying' to a 'zone' around the insured vehicle eviscerates the contractual language that defines 'occupying' a covered vehicle to mean 'in, upon, getting in, out or off.'" 743 N.E.2d at 321. At least one other court has also declined to find an individual was "occupying" a vehicle when the individual was of similar distance away. *See Barnhill v. Liberty Mut. Fire Ins. Co.*, 129 F. Supp. 2d 1192, 1197 (N.D. Ind. 2001) (claimant sitting in a state police vehicle that was 60 feet west and 30 feet north of the van he exited weighed against finding that claimant was occupying the covered vehicle).

7

The undisputed evidence shows that the accident took place "[a]lmost directly out front of the door" of the Tractor Supply store in "the main drive lane." (ECF 27-7 at 7). Mr. Simpson's son, Zachary Simpson, who retrieved Mr. Simpson's vehicle following the accident, also testified that the vehicle was in the fourth or fifth parking stall from the curb of the building. (ECF 27-7 at 19-20). Zachary Simpson also testified:

> Q. Okay. Do you have any idea how far the distance was between [Mr. Simpson's] vehicle and where he was injured?
>
> A. He was roughly here.
>
> Q. Okay.
>
> A. So whatever standard parking stalls would be. I don't know. Say 15, 30, 45. Maybe what? 60 feet roughly, max.
>
> Q. Okay. So max of 60, minimum of --
>
> A. 40.
>
> Q. --45?
>
> A. Yeah. 45, 60.

(ECF 27-7 at 19).

Plaintiff argues that the facts here are distinct from those in *Lake* because Mr. Simpson was at a minimum of 45 feet away from the vehicle. However, the undisputed evidence shows that Mr. Simpson was at an approximate distance inclusive of 60 feet, a distance the *Lake* court found too far, suggesting that Mr. Simpson was still a considerable distance from the vehicle such that he was not getting in or entering the vehicle at the time of the accident. *See Lake*, 743 N.E.2d at 320 ("we hold that 'getting in,' means entering"). And while Plaintiff asserts that Mr. Simpson was at least 45 feet from the vehicle, another court declined to find a claimant was "occupying" a vehicle under similar distances. *See Miller*, 518 N.E.3d at 487-88 (claimant who was about thirty feet

8

from truck was not "getting into, or getting out of" the insured vehicle); *see also Lake*, 743 N.E.2d at 321 ("[T]he idea of extending coverage for individuals 'getting in' or 'occupying' to a 'zone' around the insured vehicle eviscerates the contractual language that defines 'occupying' a covered vehicle to mean 'in, upon, getting in, out or off.'"). The distance from the place of the accident and the vehicle, like that in *Lake*, is of great determinative weight. A consideration of the other *Miller* factors, which the Court in *Lake* said are "instructive," in determining whether a claimant was "getting in," do not persuade the Court that Mr. Simpson was "getting in" his vehicle. While the evidence shows that Mr. Simpson intended to return to his vehicle, Mr. Simpson had exited his vehicle 10 minutes prior to the accident, having already reached a zone of safety when he was at the store.

After considering the definitions of "occupying" and "getting in" as well as the applicable Indiana caselaw, the Court finds that "occupying" is not ambiguous, and Mr. Simpson was not "occupying" the covered vehicle at the time of the accident. Mr. Simpson's acts and geographic proximity do not fit within the policy language. Accordingly, Mr. Simpson was not covered by the uninsured motorist coverage in Pekin's Business Auto Insurance Policy.

Pekin also argues that Plaintiff's claim for insurance benefits fails because Pekin's Umbrella Policy that was issued to BJS Services, LLC and also in effect at the time of the accident did not include any uninsured/underinsured motorist coverage. In support, Pekin presents its Umbrella Policy that does not include uninsured motorist coverage. (ECF 27-4). In Plaintiff's response opposing Pekin's motion, it does not address Pekin's

argument. The Court therefore finds that Pekin has not shown that he is entitled to benefits under Pekin's Umbrella Policy.

Accordingly, since Plaintiff has not demonstrated that Mr. Simpson was entitled to benefits under any of Pekin's insurance policies that were in effect at the time of the accident, Pekin is entitled to judgment as a matter of law as to Count I of Plaintiff's amended complaint.

As to Count II of the amended complaint, Plaintiff has moved to dismiss Count II with prejudice, costs paid. Pekin does not oppose. Pursuant to Fed. Fed. R. Civ. P. 41(a), Count II of Plaintiff's amended complaint is dismissed with prejudice, costs paid.

### III. Conclusion

For the foregoing reasons, Plaintiff has failed to show that Mr. Simpson was covered by Pekin's insurance policies when he was struck by an uninsured driver. Therefore, Pekin's motion for summary judgment is **GRANTED**. (ECF 27). Pekin is entitled to judgment as a matter of law on Count I of Plaintiff's amended complaint. Also, Plaintiff's motion to dismiss Count II (ECF 37) is **GRANTED**. Count II of Plaintiff's amended complaint is **DISMISSED WITH PREJUDICE**.

SO ORDERED on August 25, 2025.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT